**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re** | : | **Chapter 7** |
| **John P. and Bridget Williams,** | : | |
| **Debtors.** | : | **Case No. 17-18198 (JKF)** |
| ——————————————— | | |
| **Customers Bank,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| **John P. and Bridget Williams,** | : | |
| **Defendants.** | : | **Adversary No. 18-0034** |
| ——————————————— | | |

**Statement of Reasons in Support of Order Denying in Part and Granting in Part
Defendants' Motion to Dismiss**

This 27th day of July, 2018, upon consideration of the Defendants John P. and

Bridget Williams (the "Defendants" or "Debtors")' Motion to Dismiss this Adversary

Proceeding (doc. no.4, the "Motion"):

**I.  PROCEDURAL BACKGROUND**

AND whereas,

    A. John P. and Bridget Williams filed for bankruptcy under chapter 7 on

       December 5, 2017.

    B. This adversary proceeding was filed on February 14, 2018 and seeks to deny

       the Debtors' discharge pursuant to the following sections of the Bankruptcy

       Code: 1) §727(a)(2)(A); 2) §727(a)(4); and 3) §707(a).

    C. The Defendants filed the Motion on March 12, 2018.

D.  The Plaintiff filed a response to the Motion on April 11, 2018. Doc. no. 9.

## II.  FACTUAL BACKGROUND

*the note*

A. On November 18, 2013, Cornerstone Concrete ("Cornerstone") borrowed $248,938.17 from the Plaintiff; Cornerstone executed a promissory note with monthly installments of $3,500 per month through October 2014 with a balloon payment of $211,496.25 due on November 14, 2014 (the "Note"). Complaint, Ex.A.

B.  John P. Williams (one of the Debtors) was a shareholder of Cornerstone and executed a personal guarantee of the Note. Complaint, Ex.B.

C.  On December 11, 2014, the parties executed a modification of the Note which adjusted the maturity date and balloon payment to May 14, 2016. Complaint, Ex.C. At that point, the balance on the Note was $201,906.79.

D.  On April 13, 2016, the Debtor and David Guggeis ("Guggeis"), President of Cornerstone, requested another loan modification from the Plaintiff. However, this modification was not granted because the proper financial information was not provided to the Plaintiff from Mr. Williams and Mr. Guggeis. Ex.D.

E. On May 4, 2016, the Plaintiff sent a letter to Mr. Williams and Guggeis stating that the Note was "approaching default" and that an annual review was "unable to be completed and approved" due to the borrowers' failure to provide requested financial documentation. Complaint, Ex. E.

*Debtors' property and income*

F.  At the time the Note was executed (November 18, 2013), the Debtors owned real property located at 312 Autumn Hill Dr., Oxford, PA as tenants by the

entireties (the "Property").[1] Complaint at 4.

G. On April 22, 2016, the Debtors transferred the Property to Mrs. Bridget

Williams (one of the Debtors) individually for $10.00 (the "First Transfer").[2]

Complaint, Ex. F. The same day, Mrs. Williams (in her name only) executed a

mortgage on the Property in favor of United Mortgage Corp. in the amount of

$276,000. Complaint, Ex. G.

H. On October 20, 2017 (within one year of the bankruptcy), Mrs. Williams

transferred the Property back to both Debtors for $1.00 (the "Second

Transfer"). Complaint, Ex. K. See Schedule of Financial Affairs, Doc. no. 18.

I. The Debtors Schedule A/B lists the Property as being worth $338,000.

J. The Debtors have a $269,433 mortgage on the Property. Amended Schedule

D; doc. no.22.

K. The Debtors claim the Property exempt on Schedule K pursuant to 11 U.S.C.

§522(d)(1), exempting an amount of $47,350.

L. The Debtors' Schedule D shows four secured creditors, Wells Fargo being the

largest with a claim of $269,433. Unsecured claims total $492,742. Schedule

E/F.

M. The Debtors earn a combined gross income of $6,708 per month. Schedule I.

Their expenses total $6,592.22 per month. Schedule J.

---

[1] The Complaint asserts that the Property was owned by the Debtors as tenants by the entireties prior to its transfer in 2016. However, when the Property was transferred by the Debtors on April 22, 2016, the deed stated that it was transferred as joint tenants with right of survivorship. The parties assume in the pleadings that the Debtors possessed a tenancy by the entireties, so the court will also.

[2] The Debtors' Schedule of Financial Affairs indicates that the First Transfer occurred "in connection" to a mortgage refinance." Doc. 18 at 32 in the main case.

***confession of judgment and fraudulent transfer action***

N.  On August 4, 2016, due to the parties' failure to pay the Note, a Judgment by

Confession was entered in the Chester County Court of Common Pleas (the

"Chester County Action") in favor of the Plaintiff and against Cornerstone, Mr.

Williams, Mr. Guggeis and D&J Management Associates, Inc. In the amount

of $155,179.10 (plus interest at a rate of $36.17 per day from July 13, 2016)

(the "Confessed Judgment"). Complaint, Ex. I.

O.  In an answer to an interrogatory with regard to the Chester County Action, Mr.

Williams stated, on April 25, 2017, that he lived in the Property but that he

"does not own the property in which he resides." Complaint, Ex. J at 7.

P.  On July 17, 2017, the Plaintiff filed a lawsuit in the Chester County Court of

Common Pleas against the Debtors alleging a violation of the Pennsylvania

Uniform Fraudulent Transfer Act (alleging that the Debtors had fraudulently

transferred the Property) (the "PUFTA Action"). Complaint, Ex. L.

Q.  The Debtors did not respond to the Plaintiff's counsel's discovery requests

with regard to the PUFTA Action because "they intended to transfer the

property back and file bankruptcy." Complaint, ¶29.

R.  On November 15, 2017, prior to the bankruptcy, Plaintiff's Motion to Compel

and for Sanctions against the Defendants in the PUFTA Action was granted

in part (no counsel fees were awarded). Complaint, Ex. L.

*     *     *

## III.  STANDARD ON A MOTION TO DISMISS

A.  In order to survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a

complaint must contain sufficient factual allegations that, if accepted as true,

state a claim that is "plausible on its face." Bell Atlantic Corp. v. Twombley,

550 U.S. 544, 570 (2007).

B.  "Determining whether a complaint states a plausible claim for relief will be a

context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50

(2009) (internal citations omitted).

C.  The Third Circuit has outlined a three-part test in deciding a motion to dismiss

pursuant to Rule 12(b)(6):

> First, the court must tak[e] note of the elements a plaintiff
> must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> Finally, where there are well-pleaded factual allegations, a
> court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678

F.3d 235, 243 (3d Cir. 2012) (internal quotes and citations omitted).

D.  According to this standard, the pleading requirement pursuant to

Rule 12(b)(6) has become a more stringent one to meet in recent years.  One

court recently expounded:

> Under Twombly and Iqbal, pleading requirements have
> shifted to a 'more heightened form of pleading.'  See Fowler
> v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To
> prevent dismissal, all civil complaints must set out "sufficient
> factual matter" to show that the claim is facially plausible.  Id.
> The plausibility standard requires more than a mere
> possibility that the defendant is liable for the alleged
> misconduct.  As the Supreme Court instructed in Iqbal,
> "where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint
has alleged- but it has not 'show[n]'- 'that the pleader is
entitled to relief." Iqbal, 556 U.S. at 679 (citing Fed. R. Civ.
P. 8(a)(2)).

GLD Foremost Hldgs, LLC v. Michael, 2017 WL 930599, at *2 (M.D. Pa.

March 9, 2017). See also In re Bennett, 531 B.R. 68, 71-2 (Bankr. E.D. Pa.

2015).

E. The well plead facts of the complaint are viewed in the light most favorable to

the plaintiff; legal conclusions are not assumed to be true at the motion to

dismiss stage. In re Sobol, 545 B.R. 477, 487 (Bankr. M.D. Pa. 2016).


## IV.  STANDARD REGARDING 11 U.S.C. §727(a)(2)(A)

A. Pursuant to section 727(a)(2)(A), a court shall deny the debtor a discharge

where the "debtor, with intent to hinder, delay, or defraud a creditor . . .  has

transferred, removed . . . or concealed . . . property of the debtor, within one

year before the date of the filing of the petition . . . ."

B. A party objecting to discharge pursuant to this section must establish the

following three elements: "1) the disposition of property, such as a transfer or

concealment; 2) a subjective intent on the debtor's part to hinder, delay, or

defraud. . .; 3) the disposition occurred within one year of filing for

bankruptcy." In re Sobol, 545 B.R. 477, 496 (Bankr. M.D. Pa. 2016). See also

In re Capra, 2016 WL 5106994, at *10 (Bankr. N.D. Oh. Sept. 19, 2016); In re

Lybrook, 544 B.R. 537, 548 (Bankr. W.D. Pa. 2015).

C. Before filing for bankruptcy, debtors may attempt to "maximize available

exemptions by converting nonexempt property . . . to exempt property . . .

both the House and Senate Reports validate this approach by stating the

following. . .

> The practice is not fraudulent as to creditors, and permits the debtor to
> make full use of the exemptions to which he is entitled under the law.

See 6 Collier on Bankruptcy ¶ 727.02[3][e] - [3][f] (Rev. 2013).

D. While the conversion of non exempt assets to exempt assets is not *per se*

fraudulent, "such transfers could support a denial of discharge if

accompanied by a subjective intent to hinder, delay, or defraud a creditor." In

re Ellison, 2017 WL 3976304, at *7 (B.A.P. 9th Cir. Sep. 8, 2017).


## V.  STANDARD REGARDING 11 U.S.C. §727(a)(4)(a)

A. Pursuant to section 727(a)(4)(a), a court shall not grant a debtor a discharge

if he or she "knowingly and fraudulently, in connection with the case . . . made

a false oath or account."

B. In order to establish denial of discharge pursuant to this section, a party must

establish the following five elements: "1) the debtor made a statement under

oath;[3] 2) the statement was false; 3) the debtor knew the statement was

false; 4) the debtor made the statement with fraudulent intent; and 5) the

statement was related materially to the bankruptcy case." In re Capra, 2016

WL 5106994, at *6 (Bankr. N.D. Oh. Sept. 19, 2016) (citing Eifler v. Wilson &

---

[3] Statements made on the debtor's schedules, Statement of Financial Affairs, and at §341
meetings are all under oath. In re Capra, 2016 WL 5106994, at *6 (Bankr. N.D. Oh. Sept. 19, 2016).

<u>Muir Bank & Trust Co.</u>, 588 Fed. Appx. 473, 477 (6th Cir. 2014)) (additional

citation omitted).  <u>See</u> <u>also</u> <u>In re Lybrook</u>, 544 B.R. 537, 544 (Bankr. W.D. Pa.

2015); <u>In re Strickland</u>, 350 B.R. 158, 163 (Bankr. D. Del. 2006).

C.  The false oath must relate to a material matter. If the estate would "have no

interest in property that was omitted from a schedule, the omission is not

material and should not be a ground for denying a discharge." <u>See</u> 6 Collier on

Bankruptcy ¶ 727.04[1][b] (Rev. 2015). A false oath is material if its subject

matter "bears a relationship to the bankrupt's business transactions or estate,

or concerns the discovery of assets, business dealings, or the existence and

disposition his property." <u>In re Crawford</u>, 841 F.3d 1, 8 (1st Cir. 2016).

D.  The purpose of § 727(a)(4)(a) is to insure that debtors provide all information

upon which "anyone with reason to know can rely." <u>In re Scimeca</u>, 1993 WL

744485, at *6 (Bankr. D.N.J. Jul. 14, 1993).  <u>See</u> <u>also</u> <u>In re Wills</u>, 243 B.R. 58,

63 (9th Cir. B.A.P. Dec. 22, 1999) (noting that the "objection should not apply

to minor errors or deviations in testimony under oath.").

## VI.  STANDARD REGARDING 11 U.S.C. §707(a)

A.  Section 707(a) of the Code provides that the court may "dismiss a case under

this chapter only after notice and a hearing and only for cause, including"

(1) unreasonable delay by the debtor that is prejudicial to creditors;
(2) nonpayment of any fee or charges required under chapter 123 of tile 28; and;
(3) failure of the debtor . . . to file . . . the information required by paragraph
    (1) of section 521(a), but only on a motion by the United States trustee."

B.  Although not mentioned in the statute, a debtor's lack of good faith in filing for

bankruptcy is "a proper cause for dismissal under section 707(a)." Perlin v.

Hitachi Capital Am. Corp., 497 F.3d 364, 369 (3d Cir. 2007) (citing In re

Tamecki, 229 F.3d 205 (3d Cir. 2000)) and holding that a debtor's income

and expenses can be considered in a §707(a) evaluation).

C.  A debtor's desire to avoid a single creditor or debt is not grounds for bad faith

dismissal pursuant to §707(a). Janvey v. Romero, 883 F.3d 406, 414 (4th Cir.

2018) ("Almost every bankruptcy case is filed because a creditor is pursuing a

debtor."); In re Linehan, 326 B.R. 474, 483 (Bankr. D. Mass. 2005) (denying

motion to dismiss pursuant to §707(a) where debtors' alleged efforts to evade

judgment did not rise to a level of "egregious conduct or abuse" to warrant

dismissal. The court further noted that the fraudulent transfer action of which

the creditor complained could be recovered in bankruptcy for the benefit of all

creditors by the Chapter 7 Trustee "using his avoidance powers" under

sections 544 and 548 of the Code.)

D.  Courts employ a stringent standard when evaluating assertions of bad faith

pursuant to §707(a) and the statute is generally used only in "egregious"

cases in which the debtor has concealed or misrepresented assets and has a

lavish lifestyle. In re Chovev, 559 B.R. 339, 345 (Bankr. E.D.N.Y. 2016)

(citations omitted); see also In re Shwartz, 799 F.3d 760, 763-64 (7th Cir.

2015); In re Marks, 174 B.R. 37,41 (Bankr. E.D. Pa. 1994).

E.  The presence of a single debt "is insufficient to find cause for dismissal." In re

McVicker, 546 B.R. 46, 51 (Bankr. N.D. Oh. 2016) (citations omitted). Further,

a large debt arising from a guaranteed business debt is neither uncommon

nor remarkable. Id. (citation omitted). See also In re Uche, 555 B.R. 57, 62

(M.D. Fla. 2016).

F. The following considerations support dismissal under §707(a):

1) the debtor reduced his creditors to a single creditor in the months prior to filing;
2) the debtor continued living a lavish lifestyle;
3) the debtor filed the case in response to a judgment in a pending litigation;
4) the debtor made no effort to repay his debts;
5) the unfairness of the use of chapter 7;
6) the debtor has sufficient resources to pay his debts;
7) the debtor is paying debts to insiders;
8) the schedules inflate expenses to disguise financial well-being;
9) the debtor transferred assets;
10) the debtor is overutilizing the protection of the Code to the unconscionable detriment of creditors;
11) the debtor employed a deliberate and persistent pattern of evading a single major creditor;
12) the debtor failed to make candid and full disclosure;
13) the debts are modest in relation to assets and income; and
14) there are multiple filings or other procedural "gymnastics."

In re Mottilla, 306 B.R. 782, 790 (Bankr. M.D. Pa. 2004) (noting that "generally,

the presence of only one of these factors is not sufficient to support a §707(a)

dismissal.") (citations omitted). See also In re McVicker, 546 B.R. 46, 55-6

(Bankr. N.D. Oh. 2016) (using the same factors). Judge Frank of this court has

stated the factors succinctly:

1) the debtor's (extravagant) lifestyle and ability to pay.
2) the disproportionate impact that bankruptcy relief would have on one particular creditor, or only a few creditors, as compared to other creditors.
3) forum shopping or efforts to manipulate the judicial process to thwart the orderly determination of a creditor claim pending in another court.
4) prepetition fraudulent conduct to place assets beyond the reach of creditors or less than full and candid disclosure in the bankruptcy process itself.
5) an end result, if the bankruptcy relief is permitted, that is perceived to be fundamentally unfair or excessive.

-10-

In re Falch, 450 B.R. 88, 94 (Bankr. E.D. Pa. 2011).


## VII.  ANALYSIS

*§727(a)(2)(A)*

A. Count I will not be dismissed because the Complaint adequately pleads the

necessary elements of a cause of action pursuant to §727(a)(2)(A): 1) on

October 20, 2017, the Debtors transferred the Property (from Mrs. Williams

individually to both Debtors, the "Second Transfer"); 2) the Second Transfer

was allegedly made to delay and or hinder creditors by, *inter alia*, doubling

the Debtors' exemptions; and 3) the transfer was within a year prior to the

filing of the bankruptcy.

B. The Defendants argue, obliquely,[4] that the transaction in question does not

meet the definition of "transfer" pursuant to the statute. Yet many courts have

found that similar transactions - moving property from a joint ownership to a

single ownership, or vice versa - to be a "transfer" for purposes of analyzing a

bankruptcy debtor's discharge. See e.g Ford v. Poston, 773 F.2d 52 (4th Cir.

1985) (denying discharge under §727(a)(2)(A) because the debtor transferred

interest in real property to himself and wife as tenancy by the entireties); In re

Delcorso, 382 B.R. 240, 253 (Bankr. E.D. Pa. 2007) ("[t]he transfer of

property . . .  from one spouse to the married couple as tenants by the

entirety constitutes a transfer of the property from one legal entity to a

---

[4] The Defendants reference the Pennsylvania Uniform Voidable Transfer Act, even though the Complaint states causes of action only under the Bankruptcy Code.

different legal entity."); In re Loeber, 12 B.R. 669 (Bankr. D.N.J. 1981) (similar

transaction was a transfer for nondischargeability purposes); In re Golob, 252

B.R. 69 (E.D. Va. 2000) (same); In re Wainsztein, 117 B.R. 742 (S.D. Fla.

1990) (same).

C. The case on which the Defendants rely, In re Clawson, 359 B.R. 118 (Bankr.

W.D. Pa. 2007) is inapposite. While the court held that the transfer was not a

voidable fraudulent conveyance, the matter was analyzed pursuant to

Pennsylvania state law (12 Pa. §5101(b)), rather than the Bankruptcy Code.


**§727(a)(4)**

A. Because the Plaintiff fails to state a sufficient cause of action in Count II of the

Complaint pursuant to §727(a)(4), this count will be dismissed.

B. The Plaintiff alleges here simply that the Debtors made a false oath in stating

on their schedules that they initiated the First Transfer in order to obtain a

refinance, but that they could not provide a "cogent explanation" why this was

necessary. Complaint at 8 (unpaginated).

C. Count II merely states a conclusory allegation regarding the Debtors' false

oath. This count fails to allege in detail - as is necessary with regard to an

allegation of fraud[5] - the Debtor's intent in making such a fraudulent

statement that would have no impact on their bankruptcy case. See e.g. In re

Sobol, 545 B.R. 477, 499 (Bankr. M.D. Pa. 2016) (dismissing §727(a)(4)

causes of action on a motion to dismiss where plaintiff failed to explain what

---

[5] In re Sobol, 545 B.R. 477, 487 (Bankr. M.D. Pa. 2016).

made the alleged failure to list transfers and payments to insiders fraudulent;

the court noted that the plaintiff "failed to move from pleading the merely

possible to the plausible" under the statute).

**§707(a)**

A. Count III alleges that the Debtors' bankruptcy should be dismissed for having

been filed in bad faith because the Debtors sought to thwart the Chester

County Action and suggests, in a conclusory manner, that the bankruptcy

affects the Plaintiff disproportionally and is "fundamentally unfair." Complaint

at 8 (unpaginated).

B. Count III will be dismissed because it does not state a plausible cause of action

that this case was filed in bad faith. A careful review of the relevant allegations -

taken in the light most favorable to the Plaintiff - reveals the following salient

facts:

- This bankruptcy was filed in response to a judgment in state court.

- The Debtors have four secured creditors and 12 unsecured creditors,
  one of whom is the Plaintiff. The Plaintiff is not the largest unsecured
  creditor.

- The Debtors list gross income of $6,708 and expenses of $6,592.[6]

C. These facts do not state a viable cause of action pursuant to 11 U.S.C.

§707(a). Rather than outlining a detailed factual scenario which meets the

---

[6] The Plaintiff's Opposition Memorandum notes that the Debtors spend $900 per month on car payments, $766.67 in childcare and education for their two children. Doc. # 9 at 6. While this detail is presumably meant to show (in the context of a §707(a) motion) that the Debtors maintain a lavish lifestyle, the Court is unpersuaded. Such expenses are unremarkable for a family with two young children and total monthly expenses of less than $7,000 per month.

pleading requirements set forth above, the Plaintiff describes the bankruptcy

of many Chapter 7 debtors. Bad faith is a serious allegation and more is

necessary to plead this cause of action. Therefore, Count III will be

dismissed.

## VIII.  SUMMARY

A.  For the reasons stated herein, the Motion to Dismiss will be granted in part and

denied in part.

B. The Motion will be denied with regard to Count I

C. The Motion will be granted with regard to Counts II and III.

D. An Order consistent with this Statement of Reasons shall be issued.

Dated:  July 27 , 2018.

_____
JEAN K. FITZSIMON
United States Bankruptcy Judge